# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Orix Capital Markets, LLC

**DEFENDANTS**

UBS Warburg, Inc.; UBS Warburg Real Estate Securities, Inc.; UBS Paine Webber, Inc.; and PaineWebber Mortgage Acceptance Corporation V

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED
PLAINTIFF  Dallas County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED
DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
R. Laurence Macon
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
(214) 969-2800

OCT 10 2002

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizenship of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

PERSONAL INJURY
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt Relations
- ☐ 730 Labor/Mgmt Reporting & Disclo- sure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U S Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of securities laws, including 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5; 15 U.S.C. § 78t; 15 U.S.C. § 77l; 15 U.S.C. § 77o

**VII. REQUESTED IN COMPLAINT:** ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $616,668,0000 | CHECK YES only if demanded in complaint JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions)

DATE  10/10/02

SIGNATURE OF ATTORNEY OF RECORD  R. Lan Mc

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG JUDGE_____



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 1 0 2002

CLERK, U.S. DISTRICT COURT
By _____
      Deputy
```

------------------------------------------------------------

ORIX CAPITAL MARKETS, LLC     §
                                         §

    Plaintiffs                      §
                                         §

v.                                         §     Civil Action No.: _____
                                       §

UBS WARBURG, INC.,                   §     3 02 C V 2 1 2 - R
UBS WARBURG REAL ESTATE SECURITIES  §
INC., UBS PAINEWEBBER, INC., AND     §
PAINEWEBBER MORTGAGE             §
ACCEPTANCE CORPORATION V,        §
                                         §

    Defendants.                     §

------------------------------------------------------------

## PLAINTIFF'S COMPLAINT – CLASS ACTION

TO THE HONORABLE JUDGE OF THIS COURT:

    ORIX Capital Markets, LLC on its own and acting in its capacity as Servicer and Special Servicer for Trustee LaSalle Bank, National Association brings this action against Defendants UBS Warburg, Inc., UBS Warburg Real Estate Securities Inc., UBS PaineWebber, Inc., and PaineWebber Mortgage Acceptance Corporation V (collectively "Defendants") and pleads as follows:

### SUMMARY OF THE ACTION

1.     This case concerns Defendants' securities fraud made in connection with a transaction transferring commercial mortgage loans to a trust administered by LaSalle Bank National Association and serviced by Plaintiff ORIX. The Trust is a Delaware trust evidenced by a June 1, 1999 Pooling and Servicing Agreement. The holders of the Trust certificates are referred to as the Certificateholders. Plaintiff brings this case as a Certificateholder,

PLAINTIFF'S COMPLAINT – page 1

in its representative capacity as Special Servicer of the Trust, and also as a class action under Federal Rule of Civil Procedure 23. Plaintiff seeks rescission of trust certificates and other relief under the securities laws.

## **THE PARTIES**

2.  Plaintiff ORIX Capital Markets, LLC ("ORIX") (f/k/a BancOne Mortgage Capital Markets, L.L.C. (BancOne) is a Delaware limited liability company with its principal place of business at 1717 Main Street, 9th Floor, Dallas, Texas 75201. ORIX brings this action for itself and for the Certificateholders in its capacity as Servicer and Special Servicer for the Trust.

3.  Defendants UBS Warburg, Inc., UBS Warburg Real Estate Securities Inc. (f/k/a Paine Webber Real Estate Securities, Inc. ("Paine Webber")), and UBS PaineWebber, Inc. (f/k/a PaineWebber, Inc.) (collectively the "UBS Entities") are Delaware corporations with their principal place of business at 1285 Avenue of the Americas, New York, New York 10019. The UBS Entities may be served with process by serving their registered agent Corporation Service Company (d/b/a CSC Lawyers Incorporating Service Co.), 800 Brazos, Austin, Texas 78701. On information and belief, among their business lines, the UBS Entities, and, at the time of the transactions detailed in this Complaint, Paine Webber and PaineWebber, Inc., originate(d) loans and securitize(d) them. On or about November 3, 2000, the ultimate parent of PaineWebber, Inc. and Paine Webber merged with UBS AG. On information and belief, through one or more subsequent transfers, some portion of the liability of Paine Webber and PaineWebber, Inc. was retained by UBS Warburg, Inc., a subsidiary of UBS AG.

4.      Defendant PaineWebber Mortgage Acceptance Corporation V is a Delaware corporation
        with its principal place of business at 1000 Harbor Blvd., Weehawken, New Jersey
        07086.  PaineWebber Mortgage Acceptance Corporation V may be served with process
        by serving its registered agent Corporation Service Company, 80 State Street, Albany,
        New York 12207-2543.  On information and belief, PaineWebber Mortgage Acceptance
        Corporation V, among its current business lines (and at all times relevant to this
        Complaint), originates and securitizes loans.

## VENUE AND JURISDICTION

5.      The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331
        because this is a civil action arising under the laws of the United States.

6.      Personal jurisdiction over the Defendants exists in this Court because Defendants do
        significant business in this state, including but not limited to their activities related to the
        transaction that forms the basis of this Complaint.

7.      Venue is appropriate in this Court because a substantial part of the events giving rise to
        the claims asserted in this Complaint occurred in Dallas County, Texas.  Specifically,
        Defendants solicited Plaintiff ORIX to purchase certificates in the Trust in Dallas
        County, Texas, and ORIX has serviced the loan pool from Dallas County, Texas.

## BASIS FOR REPRESENTATIVE ACTION

8.      The Pooling and Servicing Agreement provides that ORIX as Master Servicer or Special
        Servicer may in its discretion undertake any such action which it may deem necessary or
        desirable with respect to the enforcement and/or protection of the interests of the
        Certificateholders under the Pooling and Servicing Agreement.   *See* PSA § 6.03.
        Similarly, Paine Webber's Mortgage Loan Purchase Agreement acknowledges that the

PLAINTIFF'S COMPLAINT – page 3

representations, warranties and agreements made by Paine Webber are made for the benefit of, and may be enforced by or on behalf of, the Trustee and the Certificateholders to the same extent that the Purchaser has rights against Paine Webber under the Mortgage Loan Purchase Agreement. *See* MLPA § 5.3.

### Class Action Allegations

9.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, which consists of all persons who purchased or otherwise acquired PaineWebber Mortgage Acceptance Corporation V Commercial Mortgage Pass-Through Certificates, Series 1999-C1 and received the Prospectus and Prospectus Supplement described herein. Excluded from the Class are: the defendants, members of the immediate family of the defendants, individual defendants, former officers and directors of Defendants and any entity in which any defendant has or had a controlling interest, and the legal representatives, heirs, successors, or assigns of any defendant. The Class Period includes the initial offering of the Certificates.

10.     Plaintiff does not know the full size of the Class, but on information and belief, the members of the Class are so numerous that joinder of all members is impracticable. Class members are located nationwide.

11.     Plaintiff's claims are typical of the claims of the members of the Class in that the Plaintiff and each Class member purchased or otherwise obtained certificates during the Class Period in an artificially inflated market and sustained injury as a result. Plaintiff and each Class member relied on the integrity of Defendants' representations in a few commonly held documents in making these purchases.

12.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

13.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy as joinder of all class members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for the Class members to seek redress individually for the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

14.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.   Among the questions of law and fact common to the Class are:

    a.      whether federal securities laws were violated by the Defendants' acts and/or omissions;

    b.      whether statements made by the Defendants to the investing public during the Class Period omitted and/or misrepresented material facts;

    c.      whether the Defendants participated in and pursued a fraudulent scheme and the common course of conduct complained of herein;

    d.      whether the Defendants acted willfully or recklessly in omitting to state and/or misrepresenting material facts;

    e.      whether Defendants' statements during the Class Period were recklessly made about the business, operations, finances, value, stock, and prospects of the Borrowers in the Loan Pool;

    f.      whether the price of the certificates during the Class Period was artificially inflated due to non-disclosures and/or misrepresentations complained of herein; and

    g.      whether the plaintiff and other members of the Class were damaged and, if so, the proper measures thereof.

PLAINTIFF'S COMPLAINT – page 5

## THE TRANSACTIONS

### The Confidential Offering Memorandum, Prospectus, and Prospectus Supplement

15.     In 1999, PaineWebber Mortgage Acceptance Corporation V, Paine Webber, and PaineWebber, Inc. took steps to establish the Trust. The Trust would be established through a Pooling and Servicing Agreement, which would create a pool of loans for securitization. The loans for the pool would be purchased under Mortgage Loan Purchase Agreements with Paine Webber and Merrill Lynch Mortgage Capital, Inc. ("Merrill Lynch"). The Mortgage Loan Purchase Agreement with Paine Webber makes it abundantly clear that Paine Webber originated the loans it supplied to the loan pool for the express purpose of securitization. Interests in the pool of loans were to be offered simultaneously to public and private investors, all of whom would be provided with a prospectus and prospectus supplement.

16.     In or around June 1999, as part of this integrated offering, Defendant PaineWebber Inc. and Merrill Lynch & Co. prepared and sent to the Certificateholders by instrumentalities of interstate commerce the Prospectus dated March 25, 1999 (the "Prospectus") and the Prospectus Supplement to Prospectus dated June 1, 1999 ("Prospectus Supplement").

17.     In or around June 1999, as part of this integrated offering, Defendant PaineWebber Inc. and Merrill Lynch & Co. prepared and sent to ORIX by instrumentalities of interstate commerce a June 7, 1999 Confidential Offering Memorandum ("COM"), along with the Prospectus and Prospectus Supplement.

18.     The COM offered ORIX the opportunity to purchase Privately Offered Certificates, which evidenced beneficial ownership in the Trust consisting primarily of a pool of conventional, fixed-rate mortgage loans secured by 193 commercial and multifamily

PLAINTIFF'S COMPLAINT – page 6

properties. The Prospectus offered the Certificateholders the opportunity to purchase publicly traded certificates evidencing beneficial ownership in the same Trust.

19.     On information and belief, on June 1, 1999, pursuant to the COM, Prospectus, and Prospectus Supplement, the Certificateholders paid approximately $616,668,000 for various classes of PaineWebber Mortgage Acceptance Corporation V Commercial Mortgage Pass-Through Certificates, Series 1999-C1, with Plaintiff ORIX (f/k/a BANC ONE) purchasing the classes of PaineWebber Mortgage Acceptance Corporation V Commercial Mortgage Pass-Through Certificates, Series 1999-C1 set forth on the Certification of Named Plaintiff attached to this Complaint.

### The Confidential Offering Memorandum, Prospectus, and Supplemental Prospectus Representations

20.     In the COM, Prospectus, and Prospectus Supplement, PaineWebber Inc., Merrill Lynch & Co., and PaineWebber Mortgage Acceptance Corporation V represented that:

a.   "The Mortgage Loans sold to the Depositor by PWRES [Paine Webber Real Estate Securities Inc.] were generally underwritten in accordance with the underwriting criteria described under '- PWRES Underwriting Standards.'" Pro. Supp. at S-41.

b.   "Each Mortgaged Property sold to the Depositor was inspected by either (a) a member of PWRES' professional staff or by a direct agent PWRES, in the case of a Mortgage Loan sold by PWRES. [...] No inspection revealed any patent structural deficiency or any deferred maintenance considered material and adverse to the interests of the holders of the Offered Certificates or for which adequate reserves have not been established." Pro. Supp. at S-66.

c.   "Replacement reserves were calculated in accordance with the expected useful life of the components of the related Mortgaged Property [...] The useful life and cost of

replacements were based upon estimates provided by professional engineers pursuant to building condition reports completed for each Mortgaged Property, subject to certain minimum underwritten replacement reserves which are described under the heading 'Escrow Requirements' set forth under 'PWRES' Underwriting Standards'." Pro. Supp. at S-65.

d.  "All of the Mortgaged Properties were appraised in connection with the origination of the related Mortgage Loans.  Each such appraisal was in compliance with the Code of Professional Ethics and Standards of Professional Practice of the Appraisal Institute and/or the Uniform Standards of Professional Appraisal Practice as adopted by the Appraisal Standards Board of the Appraisal Foundation."  Pro. Supp. at S-66.

e.  "In connection with the origination of each Mortgage Loan, a professional engineer, licensed architect or qualified consultant inspected each related Mortgaged Property to assess the condition of the structure, exterior walls, roofing, interior structure and mechanical and electrical systems.  The resulting reports indicated whether deferred maintenance items on certain Mortgaged Properties was required and it recommended certain capital improvements for which reserves were generally established at origination."  Pro. Supp. at S-66.

f.   "The Mortgage Loans originated by PWREI [PW Real Estate Investments Inc.] and such third-party originators and sold by PWRES to the Depositor were generally underwritten to PWRES guidelines as set forth below [...]  In some instances, one or more provisions of the underwriting guidelines were waived or modified where it was determined by PWRES not to adversely affect such Mortgage Loans in any material respect."  Pro. Supp. at S-67.

PLAINTIFF'S COMPLAINT – page 8

g. "In underwriting a mortgage loan, PWRES evaluates the borrower-provided property financial statements and rent rolls. Additionally, property operating history, industry data regarding the local real estate market and an independent appraisal are reviewed." Pro. Supp. at S-67.

21. PaineWebber Inc., Merrill Lynch & Co., and PaineWebber Mortgage Acceptance Corporation V also represented that "Each Mortgage Loan Purchase and Sale Agreement shall obligate the related Mortgage Loan Seller to cure any breach of its representations and warranties (or a missing or defective document in the mortgage file) that materially and adversely affects the interests of the Trust in such Mortgage Loan." Pro. Supp. at S-71.

22. Indeed, PaineWebber Inc., Merrill Lynch & Co., and PaineWebber Mortgage Acceptance Corporation V emphasized their and the future Certificateholders' reliance on the representations and warranties of each Mortgage Loan Seller, including Paine Webber: "The Depositor make no representations or warranties with respect to the Mortgage Loans and will have no obligation to repurchase or substitute for defective Mortgage Loans. Each Mortgage Loan Seller is selling the Mortgage Loans sold by it without recourse, and, accordingly, will have no obligations with respect to the Certificates other than pursuant to the limited representations, warranties and covenants made by it to the Depositor and assigned by the Depositor to the Trustee for the benefit of the Certificateholders." Pro. Supp. at S-71.

## The Mortgage Loan Purchase Agreement and Representations

23.   Paine Webber transferred the loans to PaineWebber Mortgage Acceptance Corporation V (which transferred the loans to the Trust) under a June 1, 1999 Mortgage Loan Purchase Agreement.

24.   Under the Mortgage Loan Purchase Agreement, Paine Webber made representations and warranties about the characteristics of the loans transferred.  Paine Webber agreed that these representations and warranties were for the Certificateholders' benefit, and that ORIX, as Servicer and as Special Servicer, could enforce the representations and warranties on the Certificateholders' behalf.

25.   Specifically, Paine Webber represented and warranted that:

a.   "The Mortgage Loan Seller has not withheld any material information with respect to the Mortgage File;" *See* MLPA 3.2.(a)(v);

b.   "The Mortgage Loan Seller has no knowledge that the material representations and warranties made by the Mortgagor in each Mortgage Loan are not true in any material respect." *See* MLPA 3.2.(b)(ii);

c.   "(A) Neither the Mortgage Loan Seller, nor, to the Mortgage Loan Seller's best knowledge, (1) any originator other than the Mortgage Loan Seller or (2) the Mortgagor, committed any fraudulent acts during the orientation process of any Mortgage Loan, … and (C) to the best of the Mortgage Loan Seller's knowledge, (1) the origination of each Mortgage Loan purchased by the Mortgage Loan Seller and (2) the servicing and collection of each Mortgage Loan is in all material respects legal, proper and prudent in accordance with customary industry

PLAINTIFF'S COMPLAINT – page 10

standards utilized by prudent institutional and commercial mortgage lenders or loan servicers as appropriate." *See* MLPA 3.2.(b)(iii);

d.    Immediately prior to the sale of the Mortgage Loan to the Depositor, the Mortgage Loan Seller had good and marketable title to and was the sole owner and holder of each Mortgage Loan, and the assignment validly transferred its ownership of the Mortgage Loan, free and clear of any and all liens, pledges and other encumbrances." *See* MLPA 3.2.(b)(iv);

e.    "There is no material default, breach, violation or event of acceleration existing under the related Mortgage or Mortgage Note, and to the Mortgage Loan Seller's knowledge, there is no event … which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute such a default, breach, violation or event of acceleration." *See* MLPA 3.2.(b)(vi);

f.    "To the knowledge of [Paine Webber], as of the Closing Date, there is no pending action, suit or proceeding, arbitration or governmental investigation against a Mortgagor or Mortgaged Property, an adverse outcome of which would materially and adversely affect such Mortgagor's ability to perform under the related Mortgage Loan." *See* MLPA 3.2.(b)(ix);

g.    "Each Mortage is a valid and enforceable first lien on the related Mortgage Property subject only to … (B) covenants, conditions and restrictions, rights of way, easements and other matters of public record, none of which, individually or in the aggregate, materially interferes with the current use of the Mortgage Property or the security intended to be provided by such Mortgage or with the

related Mortgagor's ability to pay its obligations when they become due or the value of the Mortgaged Property." *See* MLPA 3.2.(b)(xxiv);

h.  "The terms of each of the Mortgage Loan Documents comply in all material respects with all requirements of applicable local, state or federal law." *See* MLPA 3.2.(b)(xxvi);

i.  "To [Paine Webber]'s knowledge, based upon a site inspection conducted in connection with the origination of the Mortgage Loan and a review of the related engineering report, each related Mortgage Property is free and clear of any material damage that would affect materially and adversely the value of such Mortgaged Property as security for the Mortgage Loan[.]" *See* MLPA 3.2.(b)(xxxviii);

j.  "The improvements located on or forming part of each Mortgaged Property comply with applicable zoning and building laws, ordinances and regulations, or … if any such improvement does not so comply, such non-compliance does not materially and adversely affect the value of the related Mortgaged Property." See MLPA 3.2.(b)(xli);

k.  "[T]he appraisal and appraiser both satisfy the requirements of the 'Uniform Standard of Professional Appraisal Practice' as adopted by the Appraisal Standards Board of the Appraisal Foundation, all as in effect on the date the Mortgage Loan was originated. *See* MLPA 3.2.(b)(l);

l.  "With respect to each Mortgage Loan originated by a correspondent of the [Paine Webber] and purchased or "table funded" by [Paine Webber] in connection with a correspondent relationship with such originator … (A) such Mortgage Loan was

underwritten substantially in accordance with standards established by [Paine Webber], (which standards are in all material respects the same as the underwriting standards for Mortgage Loans originated by [Paine Webber]); ... (C) the closing documents (which include assignment documents executed by the Mortgage Loan originator in favor of [Paine Webber]) for the Mortgage Loan were prepared in substantial compliance with forms approved by [Paine Webber] as the successor and assign to the Mortgage Loan originator." *See* MLPA 3.2.(b)(lvi); and

m.    "Each Mortgage Loan originated by [Paine Webber] was underwritten consistent in all material respects with the standards of [Paine Webber] as then in effect and each Mortgage Loan purchased by [Paine Webber] from a third-party originator was underwritten consistent in all material respects with prudent commercial mortgage conduit lending standards." *See* MLPA 3.2.(b)(lvii).

### THE REALITY: DOOMED LOANS; DEFENDANTS' MISREPRESENTATIONS, OMISSIONS, AND SUBSEQUENT COVER-UP

26.    Defendants made material misrepresentations and omissions regarding the loans that Paine Webber sold to the Trust as a Mortgage Loan Seller.

27.    Compared to all loans in the Loan Pool, the Paine Webber loans have disproportionately gone into default or required special attention, and have later been found not to meet the standards represented in the COM, Prospectus Supplement, and the Mortgage Loan Purchase Agreement.

28.    These problems, and the subsequent investigation by ORIX as the Trust's Servicer and Special Servicer, demonstrate that Paine Webber:

a. Did not perform underwriting conforming to the representations made in the COM, Prospectus Supplement, and the Mortgage Loan Purchase Agreement;

b. Waived or modified underwriting guidelines that adversely affected loans in the Loan Pool in a material respect; and

c. Failed to evaluate Borrowers and Borrowers' principals with respect to their financial capacity to meet obligations, credit history, and prior experience as owners and operators of commercial property.

29. Paine Webber failed to disclose that its practices in making the loans to be placed by it in the Trust and to be underwritten and offered to investors by its affiliate, PaineWebber Inc., did not conform to industry standards and, in fact, affirmatively misrepresented the quality of the loans that it deposited in the Trust. These affirmative misrepresentations: (1) were made by Paine Webber in the MLPA for the purpose of inducing the Trust to accept the loans and issue the Certificates and with the intent to induce Certificateholders to purchase the Certificates; (2) were incorporated by Paine Webber's affiliate, PaineWebber Inc. in the Prospectus, Prospectus Supplements, and COM without modification or correction for the purpose of inducing investors to purchase Certificates, and (3) have not been corrected by the Defendants.

30. Defendants concealed their fraud by failing to provide ORIX with relevant documents, even those documents ORIX needed to perform its duties as servicer under the Pooling and Servicing Agreement. Defendants failed to produce documents related to the underwriting of loan files as required by the Pooling and Servicing Agreement, which required Trustee LaSalle Bank, N.A. to file suit on March 28, 2002 against UBS Warburg Real Estate Securities to obtain such documents.

PLAINTIFF'S COMPLAINT – page 14

31.     Indeed, it was only through litigation against other borrowers in default, both related to this loan pool and another loan pool, that ORIX has discovered a pattern of Defendants making material misrepresentations and omissions concerning the loan pool.  Plaintiff did not know, and in the exercise of reasonable diligence could not have known before October 15, 2000, of Defendants' pattern and practice of failing to follow proper underwriting procedures and of misrepresenting the quality of the loans placed by Paine Webber in the Trust and of the falsity of the representations made by Paine Webber and PaineWebber, Inc. in connection with the offer and sale of the securities.

32.     By way of example, and not by limitation, Defendants made material misrepresentations and omissions regarding loans made to Gateway Factory Outlet Center, L.P. and to P & D Investments, Inc.

## PAINE WEBBER'S LOAN TO GATEWAY FACTORY OUTLET CENTER, L.P.

### The Loan Underwriting

33.     Gateway Factory Outlet Center Limited Partnership ("Gateway" or "Borrower") is a Washington limited partnership with its registered office in Bellevue, Washington.

34.     Ward Cook, Inc. ("Ward Cook") is an Oregon corporation with a principal office in Portland, Oregon.   Among its business lines, Ward Cook originates and securitizes commercial loans.

35.     On or about August 24, 1998, Ward Cook made a loan  in the original principal amount of $7,725,000 (the "Loan") to Gateway.  As evidence of the indebtedness resulting from the Loan, Gateway made, executed and delivered to Ward Cook a Deed of Trust Note (the "Note") in the original principal amount of $7,725,000.

PLAINTIFF'S COMPLAINT – page 15

36.     The Loan was secured by, *inter alia*, a Deed of Trust, Security Agreement and Assignment of Leases and Rents (the "Deed of Trust" or "Mortgage"), dated as of August 24, 1998.

37.     In or about August 1998, Ward Cook assigned the Note, the Deed of Trust and other loan documents to Paine Webber pursuant to an Assignment of Note, Deed of Trust, Leases and Rents and Loan documents.

### Transfer of the Loan to the Trust

38.     In or about June 1999, PaineWebber Mortgage Acceptance Corporation V agreed to purchase certain loans Paine Webber originated that conformed to certain criteria specified in the Mortgage Loan Purchase Agreement. Effective as of June 1, 1999, Paine Webber transferred the Loan to PaineWebber Mortgage Acceptance Corporation V pursuant to the Mortgage Loan Purchase Agreement.

39.     The same day and pursuant to the Pooling and Servicing Agreement, PaineWebber Mortgage Acceptance Corporation V, as Depositor, transferred the Loan to LaSalle Bank, N.A. as Trustee for the certificateholders of the Trust.

### The Failed Loan

### Lack of Public Utilities at the Peace Arch Factory Outlet

40.     The property used to secure Gateway's Mortgage is property located in Whatcom County, Washington, and is known as the Peace Arch Factory Outlet Center – Phase I ("the Property"), which is where Gateway operates a factory outlet center by leasing space to retail tenants.

41.     The Property has never been serviced with public water and sewer utility services. The Property is serviced by a private septic system and a private water well, which is over a mile from the Property and not owned by Gateway.

42.     Furthermore, Gateway currently has no legal right to enter upon these private lands and public rights-of-way for purposes of making necessary repairs to the water pipes. As a result, Gateway would bear the full cost of removing and relocating the waterlines if mandated by the County to accommodate road widening or other improvements.

43.     On September 9, 1992, Gateway's principal executed a Declaration of Restrictions and Grant of Easements for Water System (the "Declaration"). The Declaration refers to Gateway being able to draw water from a well located on the property. While such a well exists, it has always been dry, capped, and nonfunctioning. However, the existence of this well as a functioning source of water was relied upon in the Property survey, title report, appraisal, and environmental reports issued by Ward Cook's consultants in connection with closing the loan.

44.     Ward Cook and Paine Webber had every opportunity to inspect the Property and determine that a functioning well did not exist. Furthermore, Gateway made Ward Cook and Paine Webber fully aware of the erroneous claim that a functioning well existed on the Property. Despite this knowledge, the documentation prepared in conjunction with the loan continued to reference the existence of a functioning well on the Property.

45.     These events ran contrary to Defendants' representations and/or constituted omissions of material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading. Specifically:

PLAINTIFF'S COMPLAINT – page 17

a.　　Defendants represented that no covenants, conditions and restrictions, rights of way, easements or other matters of public record, individually or in the aggregate, materially interfered with the use of the Property or the security intended to be provided by Gateway or with the Gateway's ability to pay its obligations when they become due or the value of the Property.

b.　　Defendants represented that the terms of the loan documents complied in all material respects with all requirements of applicable local, state or federal law.

c.　　Defendants represented that based upon a site inspection conducted in connection with the origination of the Loan and a review of the related engineering report, the Property is free and clear of any material damage that would affect materially and adversely the value of the Property as security for the Loan.

d.　　Defendants represented that the improvements located on or forming part of the Property complied with applicable zoning and building laws, ordinances and regulations, or if such improvement did not so comply, such non-compliance did not materially and adversely affect the value of the Property.

e.　　Defendants represented that the appraisal and appraiser both satisfied the requirements of the Uniform Standard of Professional Appraisal Practice as adopted by the Appraisal Standards Board of the Appraisal Foundation, all as in effect on the date the Loan was originated.

46.　　Paine Webber not only failed to disclose material facts about the Property, but sought to cover them up by making representations and warranties in the MLPA that:

a.　　"(A) Neither the Mortgage Loan Seller, nor, to the Mortgage Loan Seller's best knowledge, (1) any originator other than the Mortgage Loan Seller or (2) the

Mortgagor, committed any fraudulent acts during the orientation process of any Mortgage Loan, ... and (C) to the best of the Mortgage Loan Seller's knowledge, (1) the origination of each Mortgage Loan purchased by the Mortgage Loan Seller and (2) the servicing and collection of each Mortgage Loan is in all material respects legal, proper and prudent in accordance with customary industry standards utilized by prudent institutional and commercial mortgage lenders or loan servicers as appropriate." See MLPA 3.2.(b)(iii);

b.      "There is no material default, breach, violation or event of acceleration existing under the related Mortgage or Mortgage Note, and to the Mortgage Loan Seller's knowledge, there is no event ... which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute such a default, breach, violation or event of acceleration." See MLPA 3.2.(b)(vi);

47.     The facts Defendants misrepresented and/or omitted were material in that: (1) they demonstrated the Borrower's financial instability and eventual inability to make payments on the Loan and otherwise comply with the terms of the Deed of Trust; (2) as a result the Deed of Trust eventually went unpaid and was subject to default; and (3) the Property securing the Deed of Trust was overvalued, or jeopardized and devalued.

**The Property's Pre-Existing Conditions and Unstable Economics**

48.     During the loan origination process, and immediately thereafter, pre-existing conditions and events well-known to Ward Cook and Paine Webber indicated that the Property could not produce income sufficient to timely pay off the mortgage. These pre-existing conditions and events included: (a) the potential costs to the Property of not having all private easements and a permanent, irrevocable easement with the County right-of-way

for the private water transmission lines, (b) the impact of declining tenant sales (based largely on the significant deterioration of the Canadian currency), (c) the impact of month-to-month leases or leases with maturities of less than 18 months, (d) the impact of rental rate discounting to allow for concessions, tenant improvements and tenant expense caps, and (e) media (national and local) reports on the poor performance of outlet centers, which posed a higher risk profile.

49.     These conditions and events did not occur overnight, but instead were either pre-existing or resulted from prolonged economic forces pre-dating the June 1999 COM, Prospectus, and Prospectus Supplement.   These conditions would have been discovered through properly conducted underwriting in connection with the origination of the Mortgage Loan.   Despite these pre-existing conditions and events, Paine Webber warranted and represented that:

a.      "The Mortgage Loan Seller has not withheld any material information with respect to the Mortgage File;"  See MLPA 3.2.(a)(v);

b.      "The Mortgage Loan Seller has no knowledge that the material representations and warranties made by the Mortgagor in each Mortgage Loan are not true in any material respect."  See MLPA 3.2.(b)(ii);

c.      "With respect to each Mortgage Loan originated by a correspondent of the [Paine Webber] and purchased or "table funded" by [Paine Webber] in connection with a correspondent relationship with such originator … (A) such Mortgage Loan was underwritten substantially in accordance with standards established by [Paine Webber], (which standards are in all material respects the same as the underwriting standards for Mortgage Loans originated by [Paine Webber]); … (C)

the closing documents (which include assignment documents executed by the Mortgage Loan originator in favor of [Paine Webber]) for the Mortgage Loan were prepared in substantial compliance with forms approved by [Paine Webber] as the successor and assign to the Mortgage Loan originator." See MLPA 3.2.(b)(lvi); and

d.     Each Mortgage Loan originated by [Paine Webber] was underwritten consistent in all material respects with the standards of [Paine Webber] as then in effect and each Mortgage Loan purchased by [Paine Webber] from a third-party originator was underwritten consistent in all material respects with prudent commercial mortgage conduit lending standards." See MLPA 3.2.(b)(lvii).

50.     The facts Defendants misrepresented and/or omitted were material in that: (1) they demonstrated the Borrower's financial instability and eventual inability to make payments on the Loan and otherwise comply with the terms of the Deed of Trust; (2) as a result the Deed of Trust eventually went unpaid and was subject to default; and (3) the Property securing the Deed of Trust was overvalued, jeopardized, and devalued.

## PAINE WEBBER'S LOAN TO P & D INVESTMENTS, INC.

### The Loan Underwriting

51.     P & D Investments, Inc. ("P & D" or the "Borrower") is a North Carolina corporation with its registered office in Charlotte, North Carolina.

52.     On or about July 7, 1998, Paine Webber made a loan in the original principal amount of $1,600,000 (the "Loan") to P & D. As evidence of the indebtedness resulting from the Loan, P & D made, executed and delivered to Paine Webber a Mortgage Note (the "Note") in the original principal amount of $1,600,000.

PLAINTIFF'S COMPLAINT – page 21

53.     The Loan was secured by, *inter alia*, a Deed of Trust, Security Agreement and
        Assignment of Leases and Rents (the "Deed of Trust" or "Mortgage"), dated as of July 7,
        1998.

### Transfer of the Loan to the Trust

54.     In or about June 1999, PaineWebber Mortgage Acceptance Corporation V agreed to
        purchase certain loans Paine Webber originated that conformed to certain criteria
        specified in the Mortgage Loan Purchase Agreement.  Effective as of June 1, 1999, Paine
        Webber transferred the Loan to PaineWebber Mortgage Acceptance Corporation V
        pursuant to the Mortgage Loan Purchase Agreement.

55.     The same day and pursuant to the Pooling and Servicing Agreement, PaineWebber
        Mortgage Acceptance Corporation V, as Depositor, transferred the Loan to LaSalle Bank,
        N.A. as Trustee for the certificateholders of the Trust.

### The Failed Loan

### Villager Lodge: the "Haven of Illegal Activity"

56.     The property securing P & D's Mortgage is located in Mecklenburg County, North
        Carolina known as the Villager Lodge ("the Property"), which is where P & D operates a
        110-resident motel by renting rooms on a daily and weekly basis.

57.     Beginning as early as January 1997, the Property was subject to repeated breaches of the
        peace including:

        a.      The Charlotte-Mecklenburg Police Department (the "Police") receiving a total of
                1,328 calls to the property from January 1997 to April 2000;

        b.      Police officers taking 1,204 miscellaneous reports for incidents that occurred at
                the property from January 1997 to April 2000;

PLAINTIFF'S COMPLAINT – page 22

c.     From January 1997 to March 2000, Police officers taking 186 offense reports that included, but were not limited to, homicide, armed robbery, robbery, assault, and numerous property crimes;

d.     From January 1997 to March 2000, Police officers making 204 arrests for incidents that included, but were not limited to, homicide, armed robbery, aggravated assault, weapons violations, controlled substance violations, prostitution, and sex offenses;

e.     Medic personnel responding to 192 calls for service for incidents including gunshot wounds, lacerations from assaults, drug overdoses, and psychiatric/suicide attempts from September 1997 to February 2000.

58.    Over this same time period, the Property acquired a reputation in both the law enforcement community and the City of Charlotte in general as a marketplace for the illegal sale and possession of controlled substances and as a haven for criminal activity associated with the illegal sale and possession of controlled substances.  In addition, prior to April 2000, P & D received written notice from the City of Charlotte that a nuisance was being maintained on the Property based on at least two prior occurrences within a five year period that involved the possession of a controlled substance with the intent to sell or the sale of controlled substances.

59.    The culmination of these illegal activities prompted the City of Charlotte to file a complaint against Paine Webber and P & D in June 2000 alleging violations of North Carolina's nuisance statute and seeking a forfeiture of the Property.

60.    These events ran contrary to Defendants' representations and/or constituted omissions of material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading.  Specifically:

a.    Defendants represented that there was no event which with the passage of time or with notice and the expiration of any grace or cure period, would constitute a material default, breach, violation or event of acceleration.

b.    Defendants represented that, as of the Closing Date, there was no pending action, suit or proceeding, arbitration or governmental investigation against P & D or the Property, an adverse outcome of which would materially and adversely affect such P & D's ability to perform under the Loan.

c.    Defendants represented that, based upon site inspection conducted in connection with the origination of the Loan and a review of the related engineering report, the Property was free and clear of any material damage that would affect materially and adversely the value of such the Property as security for the Loan.

d.    Defendants represented that  the improvements located on or forming part of the Property complied with applicable zoning and building laws, ordinances and regulations, or if any such improvement did not so comply, such non-compliance did not materially and adversely affect the value of the Property.

61.    Furthermore, Paine Webber not only failed to disclose material facts about the Property, but sought to cover them up by making representations and warranties in the Mortgage Loan Purchase Agreement that:

a.    "The Mortgage Loan Seller has not withheld any material information with respect to the Mortgage File;" *See* MLPA 3.2.(a)(v);

PLAINTIFF'S COMPLAINT – page 24

b.      "The Mortgage Loan Seller has no knowledge that the material representations and warranties made by the Mortgagor in each Mortgage Loan are not true in any material respect." *See* MLPA 3.2.(b)(ii);

c.      "The terms of each of the Mortgage Loan Documents comply in all material respects with all requirements of applicable local, state or federal law." *See* MLPA 3.2.(b)(xxvi); and

d.      "Each Mortgage Loan originated by [Paine Webber] was underwritten consistent in all material respects with the standards of [Paine Webber] as then in effect and each Mortgage Loan purchased by [Paine Webber] from a third-party originator was underwritten consistent in all material respects with prudent commercial mortgage conduit lending standards." *See* MLPA 3.2.(b)(lvii).

62.     The facts Defendants misrepresented and/or omitted were material in that: (1) they demonstrated the Borrower's financial instability and eventual inability to make payments on the Loan and otherwise comply with the terms of the Deed of Trust; (2) as a result the Deed of Trust eventually went unpaid and was subject to default; and (3) the Property securing the Deed of Trust was jeopardized and devalued.

### The Property's Deteriorating Condition

63.     Moreover, financial reports and loan files for the Property indicate that almost all of the revenue collected at the Property was in the form of cash. A proper site inspection by Paine Webber would have revealed the alarming rate of crime at the Property and the high-risk nature of the pure cash based revenue.

PLAINTIFF'S COMPLAINT – page 25

64.   Once the City of Charlotte intervened and disallowed criminals, prostitutes, and drug addicts/dealers from being guests, the occupancy rates at the Property dropped considerably causing the Loan to enter into monetary default.

65.   In addition, during the loan origination process Paine Webber identified that the Property was located in a "blighted area" and contained several deferred maintenance issues that needed to be addressed immediately because the Property had not undergone any significant rehabilitation or renovation since it was built in 1958.

66.   However, records indicate that instead of making immediate and necessary maintenance Paine Webber demanded that the inspecting engineer revise the estimates for the deferred maintenance reserve by roughly $90,000.00.

67.   Paine Webber's demand for a revised appraisal ran contrary to Paine Webber's representation that: "[T]he appraisal and appraiser both satisfy the requirements of the 'Uniform Standard of Professional Appraisal Practice' as adopted by the Appraisal Standards Board of the Appraisal Foundation, all as in effect on the date the Mortgage Loan was originated. *See* MLPA 3.2.(b)(l).

68.   Furthermore, Paine Webber not only failed to disclose material facts about the Property, but sought to cover them up by making representations and warranties in the Mortgage Loan Purchase Agreement that:

   a.   "The Mortgage Loan Seller has not withheld any material information with respect to the Mortgage File;" *See* MLPA 3.2.(a)(v);

   b.   "The Mortgage Loan Seller has no knowledge that the material representations and warranties made by the Mortgagor in each Mortgage Loan are not true in any material respect." *See* MLPA 3.2.(b)(ii);

PLAINTIFF'S COMPLAINT – page 26

c.    "The terms of each of the Mortgage Loan Documents comply in all material respects with all requirements of applicable local, state or federal law." *See* MLPA 3.2.(b)(xxvi); and

d.    Each Mortgage Loan originated by [Paine Webber] was underwritten consistent in all material respects with the standards of [Paine Webber] as then in effect and each Mortgage Loan purchased by [Paine Webber] from a third-party originator was underwritten consistent in all material respects with prudent commercial mortgage conduit lending standards." *See* MLPA 3.2.(b)(lvii).

69.    The facts Defendants misrepresented and/or omitted were material in that: (1) they demonstrated the Borrower's financial instability and eventual inability to make payments on the Loan and otherwise comply with the terms of the Deed of Trust; (2) as a result the Deed of Trust eventually went unpaid and was subject to default; and (3) the Property securing the Deed of Trust was jeopardized and devalued.

## PLAINTIFF'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Exchange Act § 10(b) (15 U.S.C. § 78j) and Rule 10b-5 (17 C.F.R. § 240.10b-5)

70.    Plaintiff incorporates by reference the Complaint's preceding paragraphs.

71.    Defendants used an instrumentality of interstate commerce in connection with the securities transaction in this case, including interstate wire transfers of funds, United States Mail and other delivery of the COM, Prospectus and Prospectus Supplement, and correspondence and/or telephone calls to interested purchasers, Merrill Lynch, Merrill Lynch & Co., and ORIX.

72.    Paine Webber in the MLPA and PaineWebber Inc. in the COM, Prospectus, and Prospectus Supplement made misrepresentations of material fact or failed to state

PLAINTIFF'S COMPLAINT – page 27

material facts that were necessary to prevent their other statements from being misleading ("omissions"). Specifically, the Prospectus and the Prospectus Supplement misrepresented those items set forth in this Complaint under the heading "The Representations". The specific loan transactions detailed in this Complaint provide specific examples of the falsity of those representations and the materiality of the facts misrepresented or omitted. Furthermore, Defendants failed to state that Paine Webber's representations and warranties were knowingly false, that Paine Webber was providing a loan pool containing loans that it knew did not meet the representations and warranties, or that Paine Webber had a pattern and practice of failing to follow the very underwriting guidelines that it warranted it had followed as to individual loans.

73.     Defendants made the misrepresentations and omissions knowingly, or with reckless disregard for their truth or falsity. Specifically, Defendants knew that the loans detailed above did not meet the representations and warranties, and yet provided them to the Trust under the representations detailed above.

74.     Plaintiff and the Certificateholders justifiably relied on Defendants' misrepresentations and omissions. Indeed, the only tool available for evaluating the loan pool is the representations and warranties and the other information set forth in the Prospectus and Prospectus Supplement. Plaintiff and the Certificateholders would not have purchased their certificates had they known that Defendants lied about the quality of the loans in the pool, and placed loans in the pool that Defendants knew did not meet the representations and warranties and failed to disclose their pattern and practice of failing to follow proper underwriting guidelines.

75.     During the initial offering period, the purchasers of the Certificates had no information about the transaction structure and the loan pool other than the COM (if received), the Prospectus, and the Prospectus Supplement.  The pricing of the Certificates depended upon the representations by the depositor of the loans that they were of a particular quality.  To the extent that the COM, Prospectus, and Prospectus Supplement misrepresented the quality of a material loan or loans, such misrepresentation affected the overall pool of loans and the attendant pricing of the Certificates.  Thus, all purchasers of Certificates during the Class Period suffered a similar injury through their purchase of Certificates at artificially inflated prices, and a presumption of reliance applies.

76.     As a direct and proximate result of such wrongful conduct, the Plaintiff and other members of the Class were damaged in connection with their purchase of certificates during the Class Period.

77.     By reason of the foregoing, the Defendants violated Exchange Act § 10(b), 15 U.S.C. § 78j(b) and SEC Rule 10b-5 promulgated pursuant thereto, and are accordingly liable.

## SECOND CAUSE OF ACTION
### Violation of Exchange Act § 20(a) (15 U.S.C. § 78t)

78.     Plaintiff incorporates by reference the Complaint's the preceding paragraphs.

79.     PaineWebber, Inc. created Paine Webber for the specific purpose of carrying out this and similar transactions, had full ownership of Paine Webber, and shared information and employees with Paine Webber.  Similarly, PaineWebber Group Inc. created PaineWebber Mortgage Acceptance Corporation V for the specific purpose of carrying out this and similar transactions, had full ownership of PaineWebber Mortgage Acceptance Corporation V, and shared information and employees with PaineWebber Mortgage Acceptance Corporation V.  PaineWebber, Inc. received and publicized through the

COM, Prospectus, and Prospectus Supplement, information it knew or should have known to be false, specifically: the representations and warranties, information regarding Paine Webber's loan origination, underwriting, and servicing, and information regarding the Paine Webber-originated, underwritten, and serviced loan pool. PaineWebber, Inc., by virtue of its position, participated in and exercised control over Paine Webber and had the power and ability to control and direct the acts and conduct complained of in this Complaint and was aware of the omissions and misrepresentations in the COM, Prospectus, and Prospectus Supplement. At all relevant times, the PaineWebber, Inc. had the power and influence to control Paine Webber. By failing to take this action to correct the conduct and misstatements of Paine Webber, PaineWebber, Inc. assisted and participated in the fraud complained of herein.

80. PaineWebber, Inc., and PaineWebber Group Inc. as control persons pursuant to Section 20(a) of the 1934 Act, further are jointly and severally liable with Paine Webber and PaineWebber Mortgage Acceptance Corporation V to the Plaintiff and other members of the Class for violation of the 1934 Act to the full extent.

81. As a result, Plaintiff and other members of the Class are entitled to recover from said Defendants the full amount for all damages to be established at trial.

### THIRD CAUSE OF ACTION
### Violation of Securities Act § 12(a)(2) (15 U.S.C. § 77*l*)

82. Plaintiff incorporates by reference the Complaint's the preceding paragraphs.

83. PaineWebber, Inc. offered or sold the certificates by using interstate delivery services and United States mail, by means of the Prospectus and Prospectus Supplement.

84. The Prospectus and Prospectus Supplement included untrue statements of material fact, or omitted to state facts necessary in order to make the statements, in light of the

PLAINTIFF'S COMPLAINT – page 30

circumstances under which they were made, not misleading. Specifically, the Prospectus and the Prospectus Supplement misrepresented those items set forth in this Complaint under the heading "The Representations". The specific loan transactions detailed in this Complaint provide specific examples of the falsity of those representations and their materiality.

85.     Although Plaintiff and other class members received the COM in connection with their purchase of the certificates, the Prospectus and Prospectus Supplement accompanied the COM, and the COM states that "[p]urchasers should examine all information set forth in this memorandum, including the prospectus supplement and the prospectus, copies of which are attached hereto as Exhibit B." *See* COM at 2. Furthermore, the COM notes that "[i]n the case of any discrepancy between this Memorandum or the Prospectus Supplement...the Prospectus Supplement...shall govern," indicating that the latter was the actual operative offering document. *See* COM at 2. Thus, Defendants marketed and sold to prospective investors the certificates as part of a coordinated integrated "public" offering of securities for purposes of Section 12 of the Securities Act.

86.     As a direct and proximate result of Defendant's wrongful conduct, the Plaintiff and other members of the Class were damaged in connection with their purchase of certificates during the Class Period.

87.     By reason of the foregoing, PaineWebber, Inc. violated Securities Act § 12(a)(2), 15 U.S.C. § 77*l*, and is accordingly liable to Plaintiff and all Class members who purchased Certificates from Paine Webber, Inc.

<u>**FOURTH CAUSE OF ACTION**</u>
**Securities Act § 15 (15 U.S.C. § 77*o*)**

88.     Plaintiff incorporates by reference the Complaint's preceding paragraphs.

PLAINTIFF'S COMPLAINT – page 31

89.    By virtue of providing information for the COM, Prospectus, and Prospectus Supplement that was uniquely in their control, Defendants controlled the conduct of Merrill Lynch & Co. Specifically, Defendants provided Merrill Lynch & Co. the following information, which is set forth with specificity above: the representations and warranties, information regarding Paine Webber's loan origination, underwriting, and servicing, and information regarding the Paine Webber-originated, underwritten, and serviced loan pool. Defendants by virtue of their positions, participated in and exercised control over Merrill Lynch & Co. and had the power and ability to control and direct the acts and conduct complained of in this Complaint and were aware of the omissions and misrepresentations in the COM, Prospectus, and Prospectus Supplement. At all relevant times, the Defendants had the power and influence to control Merrill Lynch & Co. By failing to take this action to correct the conduct and misstatements of Merrill Lynch & Co., the Defendants assisted and participated in the fraud complained of in this Complaint.

90.    Similarly, by virtue of providing information for the COM, Prospectus, and Prospectus Supplement that was uniquely in its control, Paine Webber influenced and controlled the conduct of PaineWebber, Inc., PaineWebber Mortgage Acceptance Corporation V, and Merrill Lynch & Co. Specifically, Paine Webber provided PaineWebber, Inc., PaineWebber Mortgage Acceptance Corporation V, and Merrill Lynch & Co. the following information, which is set forth with specificity above: the representations and warranties, information regarding Paine Webber's loan origination, underwriting, and servicing, and information regarding the Paine Webber-originated, underwritten, and serviced loan pool. Paine Webber by virtue of its position, participated in and exercised control over PaineWebber, Inc., PaineWebber Mortgage Acceptance Corporation V, and

PLAINTIFF'S COMPLAINT – page 32

Merrill Lynch & Co. and had the power and ability to control and direct the acts and conduct complained of in this Complaint and was aware of the omissions and misrepresentations in the COM, Prospectus, and Prospectus Supplement. At all relevant times, Paine Webber had the power and influence to control PaineWebber, Inc., PaineWebber Mortgage Acceptance Corporation V, and Merrill Lynch & Co. By failing to take this action to correct the conduct and misstatements of PaineWebber, Inc., PaineWebber Mortgage Acceptance Corporation V, and Merrill Lynch & Co., Paine Webber assisted and participated in the fraud complained of in this Complaint.

91.    Defendants, as control persons pursuant to Section 15 of the 1933 Act, further are jointly and severally liable to the Plaintiff and other members of the Class for violation of the 1933 Act to the full extent.

92.    As a result, Plaintiff and other members of the Class are entitled to recover from said Defendants the full amount for all damages to be established at trial.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays that Defendants be cited to appear and answer, and that Plaintiff, upon hearing, have judgment against Defendants as follows:

1.    For rescission of Plaintiff's investment in the Certificates, or in the alternative, for actual damages at least in the amount of $616,668,000.

2.    For Plaintiff's reasonable attorneys' fees and costs from this action.

3.    For all interest as determined by applicable law.

4.    For all costs of Court and suit.

5.    For any other relief to which Plaintiff is entitled.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Dated: October 10, 2002.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD, LLP

By: _____

R. Laurence Macon
Texas State Bar No. 12787500
Mary L. O'Connor
Texas State Bar No. 15186900
Edward S. Koppman
Texas State Bar No. 11681000
Talcott J. Franklin
Texas State Bar No. 24010629

1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone (214) 969-2800
Facsimile   (214) 969-4343

Attorneys for the Plaintiff:

ORIX CAPITAL MARKETS, L.L.C.

611487

PLAINTIFF'S COMPLAINT – page 34